# HANG & ASSOCIATES, PLLC
ATTORNEYS AT LAW
136-20 38th Avenue, Suite 10G
Flushing, New York 11354

February 22, 2019

Xiaoxi Liu, Esq.
Tel : (718) 353-8522
Fax: (718) 353-6288
Email: xliu@hanglaw.com

**VIA ECF**
Hon. Steven Tiscione
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> **RE: Letter Motion for Approval of Settlement Agreement**
> **Case No. 1:18-cv-03801-CBA-ST**
> **Zhong et al v. Best Angel Nail & Spa II Inc., et al**

Dear Hon. Tiscione:

     Plaintiff Lan Zhong ("Plaintiff Zhong") and Plaintiff Yi Wei Pan ("Plaintiff Pan"), and Plaintiff Hua Yan Nai ("Plaintiff Nai") (collectively "Plaintiffs") and Defendants Best Angel Nail & SPA II Inc., Jianxin Lian a/k/a "Danny", and Li Li (collectively, "Defendants"), respectfully request that Your Honor approve the settlement reached in this matter. A copy of the proposed settlement agreement is annexed herein as **Exhibit A**.

## Plaintiffs' Allegations and Defendants' Responses

This action was originally brought by Plaintiffs for alleged unpaid minimum wages and overtime wages, failure to give a wage notice at time of hire, failure to provide paystubs, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 201 et seq., and the New York Labor Law ("NYLL").

*Plaintiff Zhong Lan*

From approximately September 2014 to June 29, 2018, Plaintiff Lan Zhong was hired as a nail technician for Defendants' nail and spa business located at 275 Route 25A, Miller Place, New York 11764. Throughout her employment with Defendants, Plaintiff Lan Zhong worked five (5) days a week with Sunday and Tuesday off and worked from 9:45am to 7:00pm. Plaintiff Lan Zhong was not afforded uninterrupted meal breaks or rest periods. As a result, Plaintiff Lan Zhong worked 46.25 hours per week.

Throughout her employment with the Defendants, regardless of the number of hours she worked, Plaintiff Lan Zhong was paid at fixed daily rates allocated as follows: from September 2014 to October 2015, $80.00 per day; from November 2015 to February 2016, $85.00 per day; from March 2016 to June 2016, $90.00 per day, from July 2016 to March 2017, $95.00 per day; from April 2017 to March 2018, $100.00 per day; from April 2018 to present, $105.00 per day.

*Plaintiff Yi Wei Pan*

From approximately February 2016 to December 2017, Plaintiff Yi Wei Pan was hired as a nail technician for Defendants' nail and spa business located at 275 Route 25A, Miller Place, New York 11764. Throughout his employment with Defendants, Plaintiff Yi Wei Pan worked six (6) days a week with Monday off and worked the following schedule: from 8:20 am to 8:50 am, Plaintiff Yi Wei Pan picks up about 10 other employees in Flushing, and drives them to Defendants' nail and spa business located at 275 Route 25A, Miller Place, New York 11764, arriving at 9:45am; from 9:45am to 7:00pm, Plaintiff Yi Wei Pan works at Defendants' nail and spa business located at 275 Route 25A, Miller Place, New York 11764; from 7:00pm to 8:45pm, Plaintiff Yi Wei Pan drives the employees back to Flushing and drops them off. Plaintiff Yi Wei Pan was not afforded uninterrupted meal breaks or rest periods. As a result, Plaintiff Yi Wei Pan worked 76.5 hours per week.

Throughout his employment with the Defendants, regardless of the number of hours he worked, Plaintiff Yi Wei Pan was paid at fixed daily rates allocated as follows: from February 2016 to March 2017, $75.00 per day; from March 2017 to December 2017, $95.00 per day. In addition, Plaintiff Yi Wei Pan was paid an extra $30.00 per day for chauffeuring Defendants' employees.

Plaintiff Nai Hua Yan

From approximately August 25, 2016 to July 15, 2018, Plaintiff Nai Hua Yan was hired as a nail technician for Defendants' nail and spa business located at 275 Route 25A, Miller Place, New York 11764. From August 25, 2016 to February 20, 2017, Plaintiff Nai Hua Yan worked 2 days per week on Saturday and Sunday. From March 1, 2017 to July 31, 2017, Plaintiff Nai Hua Yan worked four days per week. From August 1, 2017 to June 10, 2018, Plaintiff Nai Hua Yan worked five days per week and worked from 9:45am to 7:00pm on each of her work day without a break. Plaintiff Nai Hai Hua therefore worked 46.25 hours per week for this stated employment period. From June 11, 2018 to July 15, 2018, Plaintiff Nai Hua Yan worked six days per week and worked from 9:45am to 7:00pm on each of her work day without a break. Plaintiff Nai Hai Hua therefore worked 55.5 hours per week for this stated employment period.

Throughout his employment with the Defendants, regardless of the number of hours he worked, Plaintiff Nai Hua Yan was paid at fixed daily rates allocated as follows: from August 2017 to April 2018, $95.00 per day; from May 1, 2018 to July 15, 2018, $100.00 per day.

Further, Defendants failed to provide Plaintiffs with the time of hire wage notice, as well as correct pay stub in violation of NYLL.

Defendants contest Plaintiffs' claims.

In sum, there is a bona fide dispute between the Parties regarding the merits of Plaintiffs' claims. The instant settlement constitutes the Parties' effort to resolve same in an amicable fashion through arm's length bargaining.

### **Settlement Amount**

At the inception of the litigation, Plaintiffs submitted a settlement demand in the amount of approximately $87,904.68, including $49,795.80 for Plaintiff Pan, $22,786.48 for Plaintiff Zhong, and $15,322.40 for Plaintiff Nai. The demand was wholly based on Plaintiffs' maximum possible recovery if they were able to establish each and every claim. Though it is Defendants' position that they did not violate the FLSA and NYLL, they could not provide evidence to completely overcome Plaintiffs' claims. Thus, Defendants were willing to pay a premium, within reason, to settle this matter before protracted and costly litigation. In view of that, the Parties agreed on the settlement amount of $32,000.00 in order to avoid potentially significant and unanticipated burdens and expenses in establishing their respective positions.

The gross settlement amount is $32,000.00, inclusive of Plaintiffs' attorneys' fees and costs of $11,167.00 with settlement payments to Plaintiff Zhong of $4,600.00, settlement payments of $14,318.00 to Plaintiff Pan, and settlement payments of $1,915.00 to Plaintiff Nai. The attorney's fees and costs are allocated as follows: $10,417.00 for fees, and $750.00 for costs. This reflects a reasonable compromise between the parties' dispute over Defendants' alleged failure to pay unpaid minimum wage and overtime wages, failure to give a wage notice at time of hire and failure to provide paystubs. This settlement was reached after extensive negotiations between the parties and their attorneys, and the parties agree that the settlement is fair and reasonable.  We believe this to be a fair resolution of this matter, due to certain *bona fide* disputes about the value of Plaintiffs' claims and the risks attendant with continuing the litigation.

Moreover, Plaintiff was incentivized to settle because Defendants are willing to pay the total settlement amount through three installments within three months. Should Plaintiff insist on further litigating this matter, the value of their damages would decrease not only due to ordinary litigation risks, but also simply with the passage of time, and the likelihood that any recovery would only be paid out over a significant length of time. By settling now, Plaintiffs ensure that they will get much of what they could potentially recover within a reasonable time period, and they do so without having to wait through months of likely fruitless motion practice, then having to face the possibility that their claims may be undermined at trial.

**FLSA Settlement Approval**

Judicial approval of a wage and hour settlement brought under the FLSA depends on whether it is fair and reasonable. Courts look to the following factors: "(1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). In addition, given the purposes of the FLSA, factors that weigh against approving a settlement also include the following: (1) "the presence of other employees situated similarly to the claimant"; (2) "a likelihood that the claimant's circumstance will recur"; (3) "a history of FLSA non-compliance by the same employer or others in the same industry or geographic region"; and (4) the desirability of "a mature record" and "a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace." *Id*. at 336. (Citations omitted.)

Ultimately, the settlement must reflect a fair and reasonable compromise of disputed issues with the principal question being "whether the agreement reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366, (S.D.N.Y. 2013)) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Zeltser v. Merrill Lynch & Co.*, 2014 U.S. Dist. LEXIS 135635, at *16 (S.D.N.Y. Sept. 23, 2014) (citations omitted). Applying these factors, Plaintiff suggests that they weigh strongly in favor of settlement approval.

In light of the uncertainties associated with establishing liability, as well as Plaintiff's desire to avoid future legal proceedings, the settlement amount reached here is reasonable. *See Beckert v. Ronirubinov,* 2015 U.S. Dist. LEXIS 167052, at *4 (S.D.N.Y. Dec. 14, 2015) (holding that a settlement of approximately 25% of the amount initially sought was a "substantial proportion of the maximum possible recovery" and fair, especially in light of the risks associated with litigation). Here, the settlement amount of $32,000.00 is approximately 36% of the initial amount sought ($87,904.68), suggesting the fairness of the settlement amount. The settlement will also enable the parties to avoid the burdens and expenses of trial, as well as the litigation risks that always accompany same.

Courts consider settlements fair and reasonable when, as is the case here, they consider the potential risks of litigation. *See e.g.*, *Martinez v. Hilton Hotels Corp.*, 2013 U.S. Dist. LEXIS 117738, at *9 (S.D.N.Y. Aug. 20, 2013) (Court found settlement reasonable because, *inter alia*, it was a "compromise over contested issues" "in light of the unpredictability of the outcome at trial"); *Garcia v. BAE Cleaners Inc.*, 2012 U.S. Dist. LEXIS 51867, at *2 (S.D.N.Y. April 12, 2012) (Court held the settlement fair and reasonable even though the settlement amount was less than the potential liquidated damages awardable under the FLSA because it "reflect[ed] a reasonable compromise over" issues that had been "contested in the litigation"). Accordingly, this factor supports approving the Settlement Agreement as fair and reasonable.

Arm's length bargaining between represented parties weighs in favor of finding a settlement reasonable. *Lliguichuzhca*, 948 F. Supp. 2d at 366; *Zeltser*, 2014 U.S. Dist. LEXIS 135635, at *17 (finding an FLSA settlement reasonable where, as here, it was the result of arm's-length negotiations and "Plaintiffs and Defendants were represented by counsel experienced in wage and hour law."). In this case, counsels for both parties are experienced litigators who focus their practices primarily on

employment law issues. During the settlement conference held before Hon. Judge Tiscione, Plaintiffs exchanged multiple demands and offers of settlement with Defendants before settling on the terms of this proposed settlement. Moreover, prior to entering into the settlement agreement, Plaintiffs thoroughly considered the risks and benefits of continuing the litigation. The Settlement Agreement reflects the substantial efforts of all parties involved, and reasonably balances the competing interests of the parties.

Other factors present do not weigh against a settlement. This matter has not been conditionally certified as a collective action; thus, the settlement of this action will have no impact on any other employees or their rights. Plaintiffs are no longer employed by Defendants so there is no likelihood that Plaintiffs' circumstances will recur. Additionally, this case presents no novel questions of law that would benefit from extensive litigation.

### **Plaintiffs' Application for Attorney's Fees Should Be Approved**

The settlement agreement also provides for reasonable attorneys' fees. Pursuant to our firm's agreement with the Plaintiffs, the firm will be reimbursed $750.00 in filing fees, costs, and retain 1/3 of Plaintiffs' settlement amount as attorneys' fees, which is $10,417.00. Based on our firm's experience in handling FLSA and NYLL matters, this is a standard and acceptable arrangement for attorneys' fees.

Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). This case is distinguishable from the case cited in *Cheeks*, wherein that settlement agreement was denied because the attorneys' fees were set at between 40 and 43.6 percent of the total payment, without justification to support the higher fees. *Cheeks v. Freeport Pancake House, Inc.*, 796 F3d 199, 206 (2d Cir 2015) (*citing Lopez v Nights of Cabiria, LLC*, 96 F Supp 3d 170, 181-82 (SDNY 2015). Because 1/3 is standard practice in FLSA claims, the attorney's fees' being set 1/3 respectively, is a fair number for this matter as well.

Counsel for Plaintiffs and Defendants respectfully submit that the Settlement Agreement is fair and reasonable, and therefore jointly request that the Court approve or so order the Settlement Agreement.

### **Conclusion**

For the foregoing reasons, Parties hereby respectfully submit that the Settlement Agreement is fair and reasonable, and therefore jointly request that the Court approve or so order the Settlement Agreement.

              Respectfully submitted,

               */s/ Xiaoxi Liu*
              Xiaoxi Liu, Esq.